# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# AT LEXINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** **Plaintiff,** V. **LUIS R. MORALES-MONTANEZ and JESSICA R. ACOSTA,** **Defendants.** | **CRIMINAL NO. 5:17-CR-40-KKC-REW** **OPINION AND ORDER** |

*** *** ***

This matter is before the Court on Defendant Luis R. Morales-Montanez's Motion to Suppress. (DE 33). Defendant Jessica R. Acosta filed a response requesting to join Morales-Montanez's motion (DE 37), which the Court will permit, and the United States has filed a response (DE 40). Because the warrant was based on probable cause, Morales-Montanez and Acosta's motion to suppress is **DENIED**.

## I.  FACTS

Morales-Montanez and Acosta are charged with three counts of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1) and one count of possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).

On December 7, 2010, Detective Matt Evans obtained two search warrants from the Fayette District Court to search the residences located at 2428 Larkin Road and 2504 Larkin Road #172, Pegasus Place Apartments, both in Lexington, Kentucky. (DE 40-1, DE 40-2). In the affidavit for the warrant, largely identical except for the place to be searched, Detective Evans stated he received information from a qualified confidential informant (CI) in January 2016 that a Hispanic male known as "Luis" was selling large amounts of marijuana. Detective

Evans observed "Luis" operating a white Chevrolet pickup truck with license plate 192-VCX. The CI later notified Detective Evans that "Luis" had changed his license plate to 024-VYD. Detective Evans ran this registration and found it was registered to Morales-Montanez. Subsequently, the CI positively identified Morales-Montanez in a driver's license photo as the subject (DE 40-1, at 2; DE 40-2, at 2).

Detective Evans proceeded to conduct an independent investigation into Morales-Montanez. During the last week of September, he and other investigators located Morales-Montanez operating the white Chevrolet pickup truck with a female Hispanic, later identified as Jessica Acosta. After following the pair to 2428 Larkin Road, he observed Acosta and Morales-Montanez enter the front door of the residence using a key. Detective Evans then followed them to Pegasus Place apartments where he observed them enter apartment #172. After an hour, Morales-Montanez and Acosta left, locking the apartment with a key. They then returned to their vehicle and engaged in evasive driving that Detective Evans described as a common practice for drug traffickers before returning to 2428 Larkin Road. After spending a few minutes in the residence, they drove to meet with the CI and provided him/her methamphetamine. (DE 40-1, at 3; DE 40-2, at 3).

Detective Evans continued to conduct surveillance of 2428 Larkin Road and determined that the couple was living there. The property manager of Pegasus Place apartments advised Detective Evans that apartment #172 was rented to Jessica Acosta. On her rental application she listed her employment as housekeeper, but Detective Evans never witnessed Morales-Montanez or Acosta report to any legitimate employment during his surveillance of the residences. (DE 40-1, at 4; DE 40-2, at 4).

In early December, within forty-eight hours of applying for the warrant, Detective Evans contacted the CI about conducting a narcotics transaction with Morales-Montanez. Detective Evans observed Morales-Montanez exit his residence and drive to Pegasus Place apartments

and enter an apartment in the building housing apartment 172. After spending ten minutes inside, Morales-Montanez drove back to 2428 Larkin Road before driving to meet the CI and provide him marijuana. Based on that information, Detective Evans believed that the residences were being used to store illegal narcotics and proceeds from their sale and sought to search them for evidence of such activity. (DE 40-1, at 4; DE 40-2, at 4). Morales-Montanez, later joined by Acosta, has filed a motion to suppress all evidence seized pursuant to these search warrants on the grounds that they were not supported by probable cause.

## II. ANALYSIS

Morales-Montanez makes two arguments, both alleging that the affidavit lacked probable cause, in support of his motion to suppress. First, that the affidavit did not establish a sufficient nexus between alleged criminal activity and the place to be searched. Second, that the information contained in the affidavit was stale.

Probable cause exists "when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). This nexus requirement is a fundamental element of probable cause, ensuring that a search will only be authorized when the circumstances indicate evidence of illegal activity will be found at the place to be searched. *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). A reviewing court must afford "great deference" to the probable cause determination of a state-court judge, only reversing the issuing judge's discretion if it was arbitrarily exercised. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (first citing then quoting *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc)).

The affidavits on which the warrants were based established a sufficient nexus between the suspected drug trafficking activity and the residences at 2428 Larkin Road and 2504

Larkin Road #172, Pegasus Place Apartments. Morales-Montanez argues that the nexus requirement was not met "because of the absence of any observation of deliveries of drugs to the residence, no mention of frequency or any visitors to the residence and no controlled buys occurring at either residence." (DE 33-1, at 3). But these objections do not show that a nexus was not established. It is "a reasonable inference that 'in the case of drug dealers, evidence is likely to be found where the dealers reside.'" *United States v. Goward*, 188 Fed. App'x 355, 358-59 (6th Cir. 2006) (citing *United States v. Frazier,* 423 F.3d 526, 537 (6th Cir. 2005) and *United States v. Higgins,* 302 F.3d 384, 394 (6th Cir. 2002)); *see also United States v. Jones* 159 F.3d 969, 935 ("The recited statements supporting the search warrant and the fact that '[i]n the case of drug dealers, evidence is likely to be found where the dealers live," support a finding of probable cause to support the issuance of the warrant.") (internal citations omitted) (quoting *United States v. Lamon*, 16 F.3d 1429, 1188 (6th Cir. 1994)). During the time spent investigating and surveilling the residences, officers observed Morales-Montanez, on two separate occasions and once with Acosta, leave his residence at 2428 Larkin Road and visit Pegasus Place apartment #172 before completing a drug transaction. The affiant also confirmed that the residences were occupied by Morales-Montanez and Acosta. The combination of evidence that Morales-Montanez and Acosta were dealing drugs, lived in the residences, visited both residences prior to drug deals, and "the affiant-officer's experience that drug dealers keep evidence of dealing at their residence . . . establishes probable cause for the issuance of a warrant to search that residence." *Goward*, 188 Fed. App'x at 358.

Probable cause does not provide an ongoing license for officers to conduct a search, but instead expires or goes stale after a period of time. The time at which probable cause expires is "determined by the circumstances of each case and depends on the inherent nature of the crime." *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006) (first citing *Sgro v. United States,* 187 U.S. 206, 210-11; then citing *United States v. Henson*, 848 F.2d 1374, 1382 (6th

Cir. 1988). The sale of drugs out of a residence is not inherently an ongoing or continuous criminal activity, but instead exists on a continuum that must be judged by the facts of each case. *See Hython*, 443 F.3d at 485.

The information in the affidavit was not stale. While the two drug transactions referenced in the affidavit occurred more than two months apart, the second drug transaction occurred within forty-eight hours of the application for the search warrant. Even accepting that the first transaction no longer established probable cause, *but see United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) (finding information was not stale when last drug buy occurred twenty-months prior), the second more recent transaction established probable cause that the residences were being used for drug trafficking at the time the warrant was issued. *See United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) ("[E]ven assuming the information in the affidavit was in some respects 'stale,' the more recent events related therein refreshed this otherwise stale information.").

For all these reasons, the Court finds that the affidavit did establish probable cause to search the residences located at 2504 Larkin Road and Pegasus Place apartment #172. Accordingly, the Court hereby **ORDERS** that Morales-Montanez and Acosta's motion to suppress (DE 33) is **DENIED**.

Dated October 17, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY